(No. 11282.—Reversed and remanded.)

MARGARET BENNETT, Defendant in Error, *vs.* EMERY E. BENNETT, Exr., Plaintiff in Error.

*Opinion filed December 19, 1917—Rehearing denied Feb. 7, 1918.*

1. WILLS—*what agreement by widow does not estop her from insisting on certain construction of will.* On an appeal by the executor to reverse a decree finding that the widow is entitled under the will to one-third of the entire estate of the testator, treated as personal property, the widow is not estopped to insist that such construction of the will was correct because she agreed by her attorney, during the proceedings to settle the estate in the county court, to accept her homestead and the value of her dower in cash.

2. SAME—*equitable conversion defined.* Equitable conversion is that change in the nature of property, presumed to exist only by intendment of equity, by which, for certain purposes, real estate is considered as personal property or personal estate as real, and transmissible and descendible as such.

3. SAME—*when devise is treated as a gift of money and not of land.* A devise of real estate which by the provisions of the will is to be converted into money and that money distributed among the devisees, must, as to such devisees, be treated as a gift of money and not of land.

4. SAME—*construction of will giving widow "what the law allows her."* Where a will gives a widow "her lawful part," "what the law allows her," or uses words of like purport, she is entitled thereunder to such part of the testator's estate as she would have received if he had died intestate.

5. SAME—*when conversion is only for purpose of distribution among devisees.* Where a testator gives to his widow the "part or portion of my estate which may be legally due her by virtue of her rights under" the laws of Illinois, and by subsequent provisions directs a sale of his real estate and the distribution of the proceeds to certain devisees after payment of debts and the amounts due the widow and specific legatee, the conversion is only for the purpose of such distribution, and the widow is not entitled to one-third of all the estate as personalty but is entitled only to her statutory rights of homestead and dower and the widow's award.

6. SAME—*executor is entitled to have costs of appeal paid out of assets of estate.* An executor is entitled to an appeal for the purpose of obtaining a proper construction of the will, and he will be permitted to appeal without being required to assume liability for costs, except in the ordinary way out of the assets of the estate and in due course of administration.

DUNCAN, J., dissenting.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Adams county; the Hon. ALBERT AKERS, Judge, presiding.

WILSON & SCHMIEDESKAMP, and CARL E. EPLER, for plaintiff in error.

M. FINLAY CARROTT, and SAMUEL WOODS, for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Alvin Bennett, a resident of Adams county, died testate in that county August 30, 1913, leaving him surviving a widow, Margaret Bennett, who was his third wife, and eight children by a former wife. The provisions of his will, which was executed April 19, 1912, are as follows:

"*First*—It is my will that all of my just debts be paid by my executor as hereinafter named, as soon as convenient after my decease.

"*Second*—It is my will and I hereby direct my executor to pay to my wife, Margaret Bennett, the part or portion of my estate which may be legally due her by virtue of her rights under and in conformity to the laws of the State of Illinois.

"*Third*—It is my will that the remainder of my personal property be sold by my executor, either by private or public sale, as he may deem to the best interest of my estate, in the manner and form that my executor may designate.

"*Fourth*—It is my will and I hereby direct my executor to sell at public sale, according to the laws of the State of Illinois, any and all of the real estate of which I may die seized, for cash in hand, to the highest and best bidder.

"*Fifth*—After the payment of all my just debts and the payment of what money may be due my wife, Margaret Bennett, as her part or portion of my estate, and the pay-

ment of all costs connected with the settlement of my estate, it is my wish that the remainder be divided as follows:

"*Sixth*—I give, devise and bequeath to my daughter, Olive Bennett, the sum of five hundred dollars ($500) in cash.

"*Seventh*—It is my will that the remainder, after deducting said bequest of $500, be equally divided among my surviving sons and daughters, share and share equally.

"*Lastly*—I hereby nominate and appoint my son, Emery E. Bennett, executor of this my last will, and require him to give the necessary bond for the execution of this trust." * * *

The real estate of the testator at the time of his death consisted of a farm of 120 acres in Adams county and a residence property, which was his homestead, in the village of Camp Point. The personal property, including cash on hand at the death of the testator, and rents received after his death, amounted to about $1400. The costs of administration and the debts, including the widow's award, which was paid to her partly in cash and partly in chattels selected by her, amounted to more than his personal property. The will was admitted to probate, and the executor named in the will qualified and proceeded to administer upon the estate. When the year in which the widow might elect to renounce under the will had about expired there was an opportunity to sell the real estate to advantage and the attorney for the widow and the attorney for the executor met in the office of the county judge and her attorney urged that the real estate be sold under the provisions of the will. The attorney for the executor was willing to do so provided the widow would agree not to renounce under the will. Some talk was also had about the widow's interest in the estate. The attorney for the executor testified on the hearing of the appeal in the circuit court that she was only claiming a homestead right in addition to her widow's award, which had been allowed, and a dower interest in

the land, and that it was agreed at that time, among other things, that in the event of a sale of the real estate she would be allowed $1000 from the proceeds of the sale as her homestead interest, and that she would take the cash value of her dower interest according to her age, said cash value to be computed from the mortality tables. Her attorney, who also testified, did not admit the agreement as to her dower, but it is not disputed that it was agreed at that time that she would not renounce under the will so that the sale could be had at that time, and that she should be allowed a homestead of the full value of $1000. The county judge was present at this interview, but it is not clear from the evidence whether Mrs. Bennett was there or not.

The executor petitioned the court to sell the real estate and to fix the amount of his additional bond, and an order of sale was made and the farm and homestead were sold thereunder, the farm land selling for the gross amount of $20,150 and the homestead property for $1207.50. The latter was bid in by the widow, she paying therefor by her written receipt to the executor acknowledging the payment of "$1207.50 on account of legacies and devises given me under the last will and testament of Alvin Bennett, deceased." After paying the testator's debts and costs there remained for distribution $18,289.84, being the proceeds of the real estate sold and rents therefrom, which the county court ordered distributed, and directed the executor to pay to the widow $1000 for her homestead, $2980.25 for her dower interest and $47.02 as her share of rents collected; that he pay Olive Bennett her legacy of $500, and distribute the balance equally among the eight children of Alvin Bennett. From this order of distribution the widow appealed to the circuit court of Adams county. On the trial in that court the executor asked the court to hold as a proposition of law that there was no out and out conversion of the real estate of the testator owned by him at the time of his death but a conversion merely for the purposes of his

will, namely, for the payment of the $500 legacy to Olive Bennett and a distribution among his surviving sons and daughters, and that the portion of the proceeds of the sale of the real estate under the power given by said will, payable to his widow, is still impressed with its original character of dower and homestead. The court refused to give this proposition and other propositions of law to the same effect, but held as a proposition of law on behalf of the widow that the portion of the estate of Alvin Bennett legally due his wife, Margaret Bennett, by virtue of the laws of the State of Illinois and the terms of his last will and testament, was that part or portion of such estate to which she would have been entitled had said testator died intestate and all his estate had been personal estate. On appeal to the Appellate Court for the Third District the judgment of the circuit court was affirmed, and the cause has been brought to this court pursuant to a writ of *certiorari* allowed on petition of the executor.

The question to be determined involves the construction of the will of Alvin Bennett, and is whether under said will the widow took one-third of the property of which he died seized, the same as if it had been personal estate, as held by the circuit court, or whether under the will and the other circumstances shown she takes her statutory rights as widow in the real estate as fixed by the county court.

It is contended that the widow is estopped from claiming the amount that she would take if the estate were personal property, by reason of the agreement of her attorney and acquiescence by her to take her homestead and the cash value of her dower. As to this contention it does not appear positively that the widow was present when the purported agreement was made. It clearly appears, however, that she agreed she would not renounce the provisions of the will, and pursuant to such agreement the real estate was sold under the provisions of the will. She herself became the purchaser of a portion of it. The rest of it, pursuant

to said sale, has passed into the hands of the purchasers thereof. The issues in the case were formed on the objections of the widow to the final report of the executor. Those objections are not in the record, and the only contention argued is, that under the doctrine of equitable conversion she is entitled to take as if the estate consisted entirely of personal property. She is not claiming any dower right other than the cash value of her dower interest in the proceeds of the sale of the land, as determined by the county court from her age and the mortality tables, nor objecting to such amount so fixed by the county court. She is claiming that under the doctrine of equitable conversion and the Statute of Descent she is entitled to one-third of the testator's property, the same as if he had left personal property, only. She is not estopped from making such a claim as a matter of law, and as she is not claiming anything different from what the county court fixed as her homestead and dower interests in the final order of distribution, if the county court was right, as a matter of law, in finding that her interests were homestead and dower in real estate, it is only necessary to consider whether or not the will is susceptible of the construction claimed by her counsel.

As to this question, an equitable conversion is a change of real property into personal, or *vice versa,* presumed to exist only by intendment of equity. (*Greenwood* v. *Greenwood,* 178 Ill. 387.) Conversion has been defined to be that change in the nature of property by which, for said purposes, real estate is considered as personal and personal estate as real and transmissible and descendible as such. (*Haward* v. *Peavey,* 128 Ill. 430.) As applied to wills, a devise of real estate, which by the provisions of the will is to be converted into money and that money distributed among the devisees, must be treated as a devise of money and not of land. (*Baker* v. *Copenbarger,* 15 Ill. 103.) Accordingly, under the third, fourth, fifth, sixth and seventh clauses of the will there was an equitable conversion of the

real estate of the testator so far as his children were concerned, and they would take the same, under those provisions of the will, as personal property, there being an express direction to sell and distribute the proceeds. As to whether the doctrine of equitable conversion applies to the provisions in favor of the widow depends primarily upon the intent of the testator to be gathered from all the provisions of the will, and also whether the doctrine of equitable conversion must be presumed and the real estate left by the testator be considered as changed into personal property for the purposes of the will.

In *Richards* v. *Miller,* 62 Ill. 417, the testatrix, after making specific bequests in her will, added this residuary clause: "I give, devise and bequeath to my heirs-at-law the remainder of my estate." She left her surviving a husband and brothers and sisters and their descendants, but no children and no father or mother. The personal property being insufficient to pay the debts and the specific legacies, an order was obtained to sell the real estate, and the whole of the estate was sold, and upon a settlement over $4000 remained in the hands of the executor for distribution. The court said on page 421 of the opinion: "Conceding the right to apply the proceeds of the sale of the land in discharge of the specific legacies, they would only be an implied charge, resulting from a deficiency of personal assets and not from the language of the will. The right to sell and apply the proceeds was therefore limited to the necessity which existed for the payment of the unpaid debts and legacies, and the land cannot be regarded as converted out and out. The surplus will retain the character of realty so far as the charge does not extend. Upon an examination of the authorities it will be found that even a direction in a will to sell land for a particular purpose does not indicate an intention to convert real into personal property to all intents, so that any surplus of the proceeds should pass under a residuary bequest of personalty." A number of

English cases are cited in the opinion in support of the holding that where a testator directs real estate to be sold the conversion is to be limited to the purposes of the will, and is not to be considered a conversion for. all purposes unless the testator plainly so directs.

In *James* v. *Hanks,* 202 Ill. 114, we held that if a testatrix directs her lands to be sold for the particular purpose of paying certain gifts to legatees, the conversion does not give to the proceeds the quality of personalty for the benefit of her husband as her heir-at-law.

In *Dorsey* v. *Dodson,* 203 Ill. 32, it is said on page 36 of the opinion: "The testator having directed that his real estate be changed into personal property for the purposes of the will, equity regards it as already done if such purposes require it. But equity never presumes a conversion of real estate into personal property unless such a change is necessary to accomplish the lawful purposes of the will. If circumstances arise which render the conversion unnecessary, or if the purposes of a change fail, the law will not regard the conversion as made. In such a case the conversion is not required and ought not to be made, and therefore the foundation of the rule does not exist. (*Richards* v. *Miller,* 62 Ill. 417; *Chamberlain* v. *Taylor,* 105 N. Y. 185; 1 Jarman on Wills, 558.) Whenever the conversion directed by a will totally fails or the purposes of the will are otherwise satisfied the property remains as land, a conversion being wholly unnecessary."

In 9 Cyc. 839, it is stated: "Upon the principles involved in the doctrine of equitable conversion, the conversion of real into personal property under the power in a will takes place only for the purposes for which, and to the extent to which, it is authorized by the terms of the will. Where the purpose of the conversion is attained the conversion thereupon ends or a re-conversion takes place."

In *Foster's Appeal,* 74 Pa. St. 391, it was said by Mr. Justice Sharswood: "Conversion is altogether a doctrine of

equity. In law it has no being. It is admitted only for the accomplishment of equitable results. It may be termed an equitable fiction, and the legal maxim, *in fictione juris semper subsistit æquitas,* has redoubled force in application to it. It follows, of necessity, that it is limited to its end. Lord Eldon advanced this idea while his mind was evidently laboring and in suspense on the general subject. In *Ripley* v. *Waterworth,* 7 Ves. 425, he said: 'There is an obvious difference from all the cases, which establish this general principle: That where a person dealing upon his own property, only, has directed a conversion for a particular special purpose or out and out, but the produce to be applied to a particular purpose, when the purpose fails the intention fails and this court regards him as not having directed the conversion.' There must be some purpose, recognized as lawful, to be accomplished by a conversion before equity will permit it to have place."

Considering the will in the light of the foregoing authorities, there is nowhere a direction in the will to sell the real estate for the purpose of paying the portion bequeathed and devised to the surviving widow. On the contrary, the only purpose for the sale of real estate expressed in the will was to raise a fund with which to first pay the $500 legacy to Olive Bennett and then divide the residue among all the testator's eight children. The evident purpose of directing a sale was to enable such a division to be made as the testator desired, considering the circumstances and condition of his property. There was no direction of a sale for the purpose of paying the widow her portion, and there was no occasion for a sale to enable her to get the part or portion of his estate which was "legally due her by virtue of her rights under and in conformity to the laws of the State of Illinois." Of course, if from the language of the will it were clear that the testator intended that a conversion of his property should take place and his widow take as if he had died intestate, leaving only personal property,

such intention must control; and that is the principal point to be determined, under all the authorities. We do not think any such intention appears, but rather the contrary. To give a will the construction contended for by counsel for defendant in error, we must construe the will to read the same as if the testator had by apt words given the defendant in error one-third of all his property of which he died seized, both real and personal. If the testator had so intended he could have said so in a very few words, but instead of that, by the second clause of the will he directs the executor to pay to his wife the part or portion of his estate which may be legally due her by virtue of her rights under and in conformity to the laws of the State of Illinois. By the third clause he provides that the remainder of his personal property be sold. By the fourth clause he directs the sale of all his real estate. By the fifth clause it is provided that after the payment of the testator's debts (which are directed to be paid by the first clause) and the payment of what money may be due his wife as her part or portion of his estate, (which is provided for by the second clause,) and the payment of all costs connected with the settlement of his estate, the remainder is to be divided as provided in the sixth and seventh clauses. The only purpose of conversion expressed in the will was to divide the proceeds of what remained among his children in the manner indicated, after his debts had been paid, his widow had taken her lawful share and the costs of administration had been paid. Where a will gives to the widow "her lawful part," "what the law allows her," or words of like purport, she is entitled thereunder to such part of the testator's estate as she would have received if he had died intestate. (40 Cyc. 1487.)

In the recent case of *DesBoeuf* v. *DesBoeuf,* 274 Ill. 594, we held that where a testator has one surviving child by his second wife, no surviving child but certain grandchildren by his first wife and no issue by his third wife

and surviving widow, a clause in his will providing "that the balance of my estate, both real and personal, all descend to my wife, Julia, and my son, [naming him,] as the statutes of the State of Illinois provides," following a clause which gives comparatively small sums to his grandchildren, expressly excludes them from any further interest in the estate and states reasons why, will be construed to mean that the widow takes only her statutory rights of homestead and dower and that the only son shall have all the remainder of the estate. In that case we said on page 599 of the opinion: "We think it very apparent from the provisions of the whole will that what he intended by clause 3 is, that his widow is to take according to the provisions of the statute for a widow and that the son is to have the remainder. It is commonly understood among lay members of society making wills that widows are granted certain rights by statute that cannot be defeated by a will, and this the testator no doubt had in mind."

Language similar to that used in the second clause of the will under consideration occurs in a great many wills, and it must be assumed that it was used in this will with knowledge of the law in this State; that while a husband in making a will is not limited (except as to the amount of his property) as to what he may leave his wife, if he makes no provision at all for her, or if he make provisions that are not satisfactory, so that she renounces the provisions of the will in her favor, she will take what the law gives her in case of the intestacy of her husband, namely, one-third of his personal property and dower in his real estate. (*In re Taylor's Will*, 55 Ill. 252; *Laurence* v. *Balch*, 195 id. 626; *Richardson* v. *Trubey*, 240 id. 476.) It must be assumed that as the testator used such language in the will, it was his intention, to be gathered from the language of the will, to give his wife no more than she would get if he had died intestate, and any construction which would increase the portion of his estate given to her

would be contrary to the intent to be gathered from the language of the will. It is proper to take into consideration the fact that at the time the will was made the bulk of the testator's property was in real estate and so remained at the time of his death. Accordingly, the rights of the widow as fixed by the will are her statutory rights of homestead and dower and her widow's award. Her award was fixed and paid. The amount she is to receive as and for her homestead right has been fixed by agreement, so those two matters are out of the way. She was entitled to dower in the real estate, to be ascertained in one of the modes provided by the statute. She has raised no question as to the method of fixing the sum to be paid her in lieu of dower, and while her dower was not fixed by one of the methods provided by statute, such question has not been raised in this record. She is claiming a certain part of the proceeds of said sale, and has, in effect, thereby ratified the sale in which her dower interest was sold.

Defendant in error has assigned cross-errors, and insists that the Appellate Court erred in not directing, as a condition of the appeal bond of plaintiff in error in his appeal from the circuit court to the Appellate Court, that defendant in error should be protected against the payment of any part of the costs in the event that the judgment of the circuit court should be affirmed. We do not think the position of defendant in error is tenable. The executor, as such, was interested in having a correct decision in this case and had a right to appeal for the purpose of getting a proper construction of the will. There is no reason that we can see why he should not be permitted to do so without being subjected to the payment of costs in case the decision should go against him, except in the ordinary way, in due course of administration and out of the proceeds of the property, as was ordered in the case of *Emmerson* v. *Merritt,* 249 Ill. 538.

For the reasons given the judgment of the Appellate Court and that of the circuit court will be reversed and the cause remanded to the latter court, with directions to affirm the order of distribution of the county court. A certified copy of such order of the circuit court may be transmitted to the county court.

*Reversed and remanded, with directions.*

Mr. JUSTICE DUNCAN, dissenting.